# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKY DIAZ,<br><br>               Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA;<br>ALONSO MORALES; DOES 1-25,<br>Inclusive,<br><br>               Defendants. | CASE NO. 11CV2028-IEG (POR)<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

This is an action for damages arising out of an incident occurring at the San Ysidro Port of Entry on February 24, 2010.

Ricky Diaz ("plaintiff") brought a complaint against the United States of America and Officer Alonso Morales ("defendants") alleging a violation of his constitutional rights by injuring him through the use of excessive force. Plaintiff also alleged that defendants committed assault and battery against him and were negligent.

The matter came before the Court for trial without a jury on July 11, 2013, July 12, 2013, July 31, 2013, August 1, 2013 and August 2, 2013. Jarod A. Krissman, of Stolpman, Krissman, Elber & Silver, appeared on behalf of plaintiff.

Beth A. Clukey, Assistant United States Attorney, United States Attorneys Office for the Southern District of California, appeared on behalf of defendants.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1346 (b), the Federal Tort Claims Act (FTCA), as to the claims for assault, battery and negligence against the United States; the Fourth Amendment of the United States Constitution and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against Officer Morales as to the claim of excessive force. At the conclusion of the plaintiff's case, the Court granted judgment in favor of the defendants on plaintiff's negligence claim pursuant to FRCP 50 (a).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In a pretrial order which the Court signed on April 15, 2013, the parties admitted to certain facts requiring no proof at trial. The Court incorporates by reference the facts admitted by the parties and set forth in the pretrial order in Section III. The Court's findings of fact are based upon those facts admitted in the pretrial order and the evidence presented at trial.

On February 24, 2010, at approximately 11:00 p.m., plaintiff crossed into the United States from Mexico through the pedestrian lane at the San Ysidro Port of Entry. At that time, Officer Morales (defendant Morales) was stationed by the turnstile at the "Pedestrian Limit Line." Two contract security guards employed by Paragon Systems were on patrol at the Pedestrian Limit Line at that time.

On February 24, 2010, plaintiff was a 54-year old, third generation, Mexican-American, who had crossed from Mexico into the United States on many occasions. At that time, he was employed by the State of California, Department of Corrections, as a Chief Engineer, supervising the stationary engineers working at the Donovan State Prison. However, at the time of trial, plaintiff was employed as a stationary engineer at the Sierra Conservation Corps, also connected with the Department of Corrections.

1    Defendant Morales began working for the United States as a Customs and
2 Border Protection Officer in February, 2009.  He had been assigned to work at the
3 San Ysidro Port of Entry in October, 2009.  A Customs and Border Protection
4 Officer is stationed at the Pedestrian Limit Line to determine whether individuals
5 crossing into the United States from Mexico are admissible.  In other words, the
6 officers check to make sure individuals have appropriate documents to enter the
7 United States.
8    Even accepting plaintiff's testimony that when he approached defendant
9 Morales, he presented two documents – his driver's license and his California
10 identification – he thereafter continued to walk north of the Limit Line.  When
11 defendant Morales yelled to plaintiff that he needed to present his passport, plaintiff
12 responded that he did not have a passport and said he did not have to show any
13 documents because he was a United States Citizen.  Plaintiff turned back around and
14 continued walking.  At this time, defendant Morales and the two security guards
15 pursued plaintiff to a point near the entrance of the Old Port Building.  The two
16 security guards blocked plaintiff's forward movement while defendant Morales
17 stood behind plaintiff attempting to handcuff him. Defendant Morales grabbed
18 plaintiff's left wrist, on which he placed a handcuff and, when he attempted to
19 handcuff the right wrist, plaintiff pulled away.  Defendant Morales perceived this
20 action by plaintiff as active resistance.  Eventually, defendant Morales handcuffed
21 both of plaintiff's wrists.
22    Defendant Morales then placed his left arm on plaintiff's back and stood to
23 the side of plaintiff to escort plaintiff into the Old Port Building and placed him
24 against a counter without the assistance of any security guards.  At no time did
25 defendant Morales conduct a pat down.  From the time that plaintiff was handcuffed
26 until he was placed against the counter in the Old Port Building, plaintiff was angry.
27 He was "cussing" and "insulting" defendant Morales in a loud voice.  Defendant
28 Morales perceived this as verbal resistance.  Defendant Morales estimated that

1  approximately two to three minutes elapsed from the time he initially stopped
2  plaintiff and when they entered the Old Port Building.
3     Once inside the Old Port Building, defendant Morales instructed plaintiff to
4  stay still and to continue facing the wall while they were both at the counter.
5  Plaintiff's hands remained behind his back and defendant Morales continued with
6  his left arm pressed against plaintiff's back to keep him from turning.  There is no
7  dispute that plaintiff was moving during the time he stood at the counter.  While this
8  movement might have been as a result of plaintiff attempting to balance himself,
9  defendant Morales nevertheless believed plaintiff was attempting to turn around and
10 he perceived this action as active resistance and perhaps pre-assaultive behavior.
11 Therefore, defendant Morales continued to apply force, with his arm and hand
12 against plaintiff's back to keep him from turning.  Although not in his report of the
13 incident (Exhibit 1 dated February 25, 2010), the Court finds that defendant Morales
14 touched plaintiff's neck when he grabbed plaintiff's collar to prevent him from
15 turning around.  In addition, it was at this time that defendant Morales pushed
16 plaintiff's neck down.  Plaintiff then told defendant Morales that he suffered from
17 Spinal Stenosis and that defendant Morales probably was too stupid to understand
18 what it meant.
19    Although defendant Morales may have continued to put pressure on plaintiff's
20 neck, the Court finds that he did not punch, hit or push plaintiff in the head with his
21 fist.  Eventually, Officer Razon assisted defendant Morales by asking plaintiff for
22 identification.  Plaintiff produced his birth certificate and, a few minutes later, the
23 handcuffs were removed and he was allowed to walk out of the Old Port Building by
24 himself.
25    Two days after the incident, on February 26, 2010, plaintiff visited the Rees-
26 Steady Urgent Care Facility in Chula Vista.  According to Dr. Blake's report
27 (Exhibit AM), plaintiff complained of neck and shoulder pain and pain in the left
28 bicep.  According to the doctor's report: "Patient states he was not struck in the

head with a fist or clubbing." In addition, there is nothing in Dr. Blake's report that indicates plaintiff complained of any pain or bruising on his wrists as a result of handcuffing.

On January 28, 2011, plaintiff underwent an Anterior Cervical Discectomy and Fusion at C-3 to C-6. Plaintiff returned to work in May, 2011.

Dr. Kim, defendants' medical expert, testified the surgery was medically necessary. However, because of the degree of plaintiff's stenosis and the likelihood of its progression, plaintiff would have eventually needed surgery. Dr. Kim testified that the border incident expedited the need for surgery.

Dr. Calvin, plaintiff's medical expert and treating physician, testified that plaintiff's degenerative cervical disc disease was not the reason for the surgery. In his opinion, the sole reason for the surgery in 2011 was the result of plaintiff's injury at the border on February 24, 2010. Dr. Calvin opined that plaintiff would need future spinal decompression surgery. Dr. Kim, on the other hand, stated he was not sure plaintiff would need surgery in the future.

Both doctors agreed that plaintiff had a pre-existing condition involving his neck. Plaintiff had suffered a diving accident in 1977. In 2002 plaintiff suffered an elevator accident when an elevator free fell about two and a half floors. When the elevator stopped, he was knocked off his feet and hit his head on the side. Plaintiff suffered a concussion during that incident and sprained his neck (TR 206). Later that year, he was electrocuted and suffered serious neck injuries as a result (TR 207-208).

After plaintiff returned to work in May, 2011, he suffered another injury to his neck. In March, 2012, a truck in which plaintiff was riding malfunctioned on a bumpy road a caused plaintiff to again injure his neck. As a result, plaintiff suffered more frequent headaches and burning sensation in his arms (Diaz TR 94-95).

Francis Villamor, a firearms instructor and previous use of force instructor with Customs and Border Protection testified as defendants' expert on the use of

1  force. He used the Federal Law Enforcement Use of Force Model (Use of Force
2  Model – Exhibit BJ) as a reference during his testimony. He testified that an officer
3  must consider the demeanor of a subject, his surroundings and the size of the
4  subject, in determining the use of force that is reasonable and necessary. However,
5  he agreed that if, in fact, defendant Morales engaged in the force as testified to by
6  plaintiff, the force was excessive.

7       Officer Villamor testified that an officer's perception of what is happening
8  around him controls. When defendant Morales asked plaintiff for identification and
9  plaintiff ignored the request, plaintiff engaged in passive resistance. Any verbal and
10 heated exchange between defendant Morales and plaintiff was also passive
11 resistance. However, once plaintiff continued walking away from defendant
12 Morales and did not return to show identification, this behavior indicated active
13 resistance. When plaintiff pulled his hand away as defendant Morales attempted to
14 handcuff it, plaintiff was also actively resisting. Inside the Old Port Building,
15 plaintiff again engaged in active resistance when he kept moving. At the counter
16 defendant Morales perceived that plaintiff's attempt to turn around could be pre-
17 assaultive behavior which required defendant Morales to continue to push his arm
18 against plaintiff's back. Plaintiff was taller and heavier than defendant Morales
19 (plaintiff testified he is six feet tall and weighs 260 pounds). Officer Villamor
20 opined that defendant Morales's actions were reasonable and necessary throughout
21 the entire period he detained plaintiff. Finally, Officer Villamor testified that it was
22 appropriate to handcuff the plaintiff and that defendant Morales was not required to
23 use a two person escort upon escorting plaintiff into the Old Port Building to the
24 counter. This was not an arrest, but only a border detention.

25      Roger Clark, a retired Los Angeles County Deputy Sheriff, testified as an
26 expert on the use of force on behalf of plaintiff. He testified that the facts, recited by
27 plaintiff, establish excessive force. Mr. Clark testified that he has been retained as
28 an expert over 650 times, generally by plaintiffs. He testified that the handcuffs

placed on plaintiff were too tight because plaintiff complained about the tightness and defendant Morales failed to check the handcuffs. Mr. Clark agreed that handcuffing was appropriate to restrain plaintiff from actively resisting. Mr. Clark opined that a two person escort was necessary to escort plaintiff into the Old Port Building. He agreed that, once inside the building, perhaps only seconds went by before plaintiff attempted to turn around. An officer could perceive this to be noncompliant and actively resisting. He agreed that some use of force could deter plaintiff from turning around. However, pushing on the neck or head, or even grabbing the collar, was excessive.

## ANALYSIS

Claims for excessive force under *Bivens*[1] and assault and battery under the FTCA[2] require Plaintiff to establish that Defendants' use of force was excessive, *i.e.*, unreasonable, under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("all claims that law enforcement officers have used excessive force . . . ///

///

///

///

///

///

---

[1] The Supreme Court in *Bivens* held "that 'damages may be obtained for injuries consequent upon a violation of the Fourth Amendment by federal officials.'" *United States v. Duenas*, 691 F.3d 1070, 1080 n.5 (9th Cir. 2012) (quoting *Bivens*, 403 U.S. at 395).

[2] The FTCA "waives the United States' sovereign immunity for certain intentional torts committed by law enforcement officers," "including assault and battery." *Millbrook v. U.S.*, __U.S.__,133 S. Ct. 1441, 1444 (2013). "Substantively, the FTCA makes the United States liable 'to the same extent as a private individual under like circumstances,' § 2674, under the law of the place where the tort occurred, § 1346(b)(1)." *Levin v. U.S.*, __U.S.__,133 S. Ct. 1224, 1227 (2013). Thus, here, California law as to assault and battery applies. *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) ("Because [appellant's] tort claims are brought under the FTCA, and the events at issue occurred in California, we apply California tort law.").

should be analyzed under the Fourth Amendment."); *Tekle v. United States*, 511 F.3d 839, 844 (9th Cir. 2006) (as to *Bivens* claims); *Avina*, 681 F.3d at 1130 (as to FTCA assault and battery claims arising in California).[3]

"Whether an individual has been subjected to excessive force under the Fourth Amendment requires consideration of the reasonableness standard set forth in *Graham v. Connor*, 490 U.S. 386, 395 (1989)," which "balance[s] 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Luchtel v. Hagemann*, 623 F.3d 975, 980 (9th Cir. 2010). This "reasonableness inquiry . . . is an objective one: The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.'" *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

"The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of *all* the relevant circumstances." *Id.* (emphasis in original). Relevant circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, [] whether he is actively resisting arrest or attempting to evade arrest by flight . . ., the 'quantum of force' used . . ., the availability of alternative methods of capturing or detaining the suspect, and the plaintiff's mental and emotional state." *Id*. (internal quotation omitted). Courts may also consider "whether the officers' conduct comported with law enforcement standards," *id*. at 703, and the severity of any consequent injury, *see Saucier v. Katz,*

---

[3] Under California law, where assault and battery "claims concern the conduct of peace officers acting in their official capacities, [Plaintiff] must [] establish, for each cause of action, that the officers used 'unreasonable force.'" *Avina*, 681 F.3d at 1130 (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (Cal. Ct. App. 2004)). This reasonableness element is "analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution.'" *Avina*, 681 F.3d at 1130; *accord Champommier v. United States*, 2013 WL 4502069, at *17 (C.D. Cal. Aug. 21, 2013); *see also Munoz*, 120 Cal. App. 4th at 539 n.6 ("Federal civil rights claims of excessive force are the federal counterpart to state battery and wrongful death claims; in both, the plaintiff must prove the unreasonableness of the officer's conduct. Accordingly, federal cases are instructive.").

533 U.S. 194, 209 (2001); *see also Santos v. Gates*, 287 F.3d 846, 853-54 (9th Cir. 2002).

But "[b]ecause th[is] test of reasonableness . . . is not capable of precise definition or mechanical application, [] reasonableness . . . must be [] assessed by carefully considering the objective facts and circumstances that confronted the [law enforcement] officers." *City of Hemet*, 394 F.3d at 701. Accordingly, a "judge should be cautious about second-guessing a [law enforcement] officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff*, __U.S.__, 132 S. Ct. 987, 992 (2012). Always, "reasonableness 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight' and [] '[t]he calculus of reasonableness must embody allowance for the fact that [law enforcement] officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving.'" *Id.* (quoting *Graham*, 490 U.S. at 396-397).

Beginning with the nature of the intrusion, courts look first to the severity of the force applied. *Tekle*, 511 F.3d at 844 ("The first factor . . . is the severity of the force applied."); *see also Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) ("We start our analysis by assessing the quantum of force used . . . because the . . . factors bearing on the reasonableness of a particular application of force are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure.") (internal quotation omitted). "Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. Accordingly, the severity of the force applied must be appraised in light of the official standards that guide the split-second judgments of law enforcement, as well as whether and to what extent the challenged use of force violates or comports with those standards. *City of Hemet*, 394 F.3d at 703; *Luchtel*, 623 F.3d at 982-83.

After considering the testimony of the witnesses set forth above, the Court

finds Plaintiff has failed to meet his burden by a preponderance of the evidence on his claims against Defendants.

The use of force challenged in this case reduces to the following: while Plaintiff was handcuffed,[4] Defendant Morales placed his left arm and hand against the middle of Plaintiff's back, keeping him still, against a counter, and facing away from Defendant Morales. Then, perceiving movement by Plaintiff as an attempt to turn around to face him, Defendant Morales grabbed Plaintiff's collar while pushing forward with his left arm into Plaintiff's back and thereby pressed Plaintiff's neck forward toward the counter. By gripping Plaintiff's collar, Defendant Morales's clenched fist pressed against Plaintiff's neck, but at no point did Defendant Morales punch or otherwise strike Plaintiff.

This quantum of force is not inordinately severe. The Use of Force Model relied upon by Officer Villamor prescribes positioning strategies, such as facing the subject away from the officer, and restraint applications, such as handcuffs, in response to even compliant subjects under some circumstances. The application of touch pressure and holds is warranted in response to mere passive resistance, *e.g.*, verbal resistance. In line with what Officer Villamor stated, Defendant Morales evaluated what was happening around him in applying the force he believed was necessary. Defendant Morales faced a significantly larger man who was both actively resistant and verbally abusive. In line with his training, Defendant Morales attempted to counter his size disadvantage with restraints and positioning strategies, keeping Plaintiff handcuffed and facing away. Only after Plaintiff attempted to turn around did Defendant Morales grab Plaintiff's collar and press forward into his back to maintain a strategic position and control. Notwithstanding Plaintiff's active resistance, Defendant Morales did not resort to more severe, yet available, compliance techniques such as takedowns, pressure point strikes, or pepper spray.

---

[4] Plaintiff also alleges excessive force was used when the handcuffs were placed on him too tightly. However, the Court finds there is insufficient evidence presented by Plaintiff to support this claim.

1  Nor did Defendant Morales resort to the much more severe defensive tactics, such as
2  direct strikes with batons and other weapons, warranted given that Plaintiff's attempt
3  to turn around could be perceived as pre-assaultive. "[Law enforcement] officers
4  need not use the least intrusive means available to them." *Luchtel*, 623 F.3d at 982.
5  That Defendant Morales applied force less severe than available under the applicable
6  Use of Force Model weighs in favor of a finding of reasonableness. *Id.*

7  Courts may also look to consequent injuries sustained in appraising the
8  gravity of the intrusion. *See Santos*, 287 F.3d at 853-54 ("the severity of the injuries
9  may support the inference that the force used was substantial"). In this case, just
10 days after the incident, Plaintiff visited an urgent care medical facility complaining
11 of pain in his neck, shoulder, and bicep, but denied he had been hit in the head.
12 Almost a year later, Plaintiff underwent neck surgery, which the parties' medical
13 experts agree was medically necessary. But Plaintiff's long and ongoing history of
14 neck and back injuries and treatment muddles the purported connection between
15 Defendant Morales's use of force and Plaintiff's subsequent pain and surgery. Even
16 accepting that Defendant Morales's conduct caused some injury, there is no doubt
17 that Plaintiff's preexisting conditions exacerbated the injury's severity and the extent
18 of treatment required. *Cf. Luchtel*, 623 F.3d at 982. Although "physical injuries and
19 any imitations from them are distressing, it's not correct to put the blame at the
20 officers' door absent evidence that excessive force was used." *Id*. Here, as
21 discussed above, the force applied appears well within applicable law enforcement
22 standards. And the severity of Plaintiff's subsequent injuries and surgery does not
23 appear wholly, or even substantially, attributable to Defendant Morales's use of
24 force. Under these circumstances, Plaintiff's injuries do not support a finding that
25 inordinately severe force was applied. *Id.*

26 Against the nature and severity of the intrusion, courts "must assess the
27 governmental interest that might justify the use of such force. . . starting with an
28 assessment of 'the severity of the crime at issue.'" *City of Las Vegas*, 478 F.3d at

1055 (quoting *Graham*, 490 U.S. at 396.); *accord City of Hemet*, 394 F.3d at 702.  In this case, as Plaintiff entered the United States, he failed to present necessary documentation, was actively resistant and verbally abusive as Defendant Morales requested necessary documentation, and continued to actively resist even after being handcuffed and escorted to the Old Port Building for verification of the requested and necessary documentation.  Mindful of "the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country," the Court recognizes that "the Government's interest in preventing the entry of unwanted persons and effect is at its zenith at the international border."[5] *United States v. Cotterman*, 709 F.3d 952, 960 (9th Cir. 2013) (internal quotation omitted).  Nevertheless, the findings of the Court in this case do not suggest Plaintiff was a dangerous criminal or that any offense committed was serious.  "Trespassing and obstructing a police officer . . . are by no means [] serious offenses . . ." *City of Las Vegas*, 478 F.3d at 1055.  Moreover, Plaintiff was alone and unarmed during, and was never charged with any crime in relation to, the incident.  Under these circumstances, the nature of the crimes, if any, at issue provides little basis for the use of force.  *See City of Hemet*, 394 F.3d at 703.

Yet, even if not criminal, Plaintiff's conduct certainly constitutes active resistance.  *Id*. (courts must consider "whether the individual actively resisted").  Plaintiff failed to show requested documentation, walked away despite instructions to stop, cursed and insulted Defendant Morales, and attempted to turn toward Defendant Morales in the Old Port Building despite instructions to remain still.  Plaintiff's active resistence weighs in favor of a finding that the use of force was reasonable.  *See Luchtel*, 623 F.3d at 981 ("resistant behavior weighs in favor of a

---

[5] Although Plaintiff also asserts a claim for unlawful detention, [*see, e.g.*, Doc. No. 34 at 9], neither party focused on or even addressed this claim during trial.  In any event, the Court finds the incident in this case constitutes a lawful border detention.  *See Cotterman*, 709 F.3d at 960 ("border searches are generally deemed 'reasonable simply by virtue of the fact that they occur at the border.'") (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)).

finding that the officers' use of force was justified").

Finally, the Court must also must "assess whether the suspect posed an immediate threat to the safety of the officer or others." *City of Las Vegas*, 478 F.3d at 1055; *City of Hemet*, 394 F.3d at 703 (noting this as "the most important single element"). The circumstances in this case do not suggest that Plaintiff posed any generalized threat to the safety of others. He was alone, unarmed, and handcuffed. Yet, Defendant Morales perceived Plaintiff's attempt to turn around to face him as pre-assaultive, which, given Plaintiff's pronounced size advantage, could have appeared threatening. Although in hindsight such a perceived threat may seem unfounded, "judge[s] should be cautious about second-guessing a [law enforcement] officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn*, __U.S.__, 132 S. Ct. at 992. And even though courts may consider "the availability of alternative methods," *City of Hemet*, 394 F.3d at 701, "officers need not use the least intrusive means available to them," *Luchtel*, 623 F.3d at 982. Even assuming any perceived threat was in fact unfounded, Defendant Morales's split-second assessment was understandable. *See Saucier*, 623 U.S. at 204-205 ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.").

For all of the reasons discussed, the Court finds that Defendant Morales's use of force was objectively reasonable under the Fourth Amendment. Therefore,

///
///
///
///
///
///
///

1 Plaintiff failed to prove by a preponderance of the evidence an essential element of
2 his claims for excessive force under *Bivens* and assault and battery under the FTCA.

## CONCLUSION

In conclusion, judgment is entered in favor of Defendants.  Each party shall bear the costs of suit.  The clerk of the court shall enter judgment.

**IT IS SO ORDERED.**

**DATED:  September 30, 2013**

_____
**IRMA E. GONZALEZ
United States District Judge**